IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-260-FL

| | |
|---|---|
| STEVE KEHRER and<br>MIKE A. BEACHAM,<br><br> Plaintiffs,<br><br>v.<br><br>JEFFREY FIELDS, MICHAEL FIELDS,<br>RILEY CRANSTON, STUART HICKS,<br>JOHN DOE and JOHN DOE,<br><br> Defendants. | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the court on the motion by Defendants Jeffrey Fields ("Fields") and

Riley Cranston ("Cranston") (altogether "Defendants") to dismiss the complaint filed against them

in this matter for lack of personal jurisdiction in accordance with Federal Rule of Civil Procedure

12(b)(2). [DE-5]. Plaintiffs Steve Kehrer ("Kehrer") and Mike A. Beacham ("Beacham")

(altogether "Plaintiffs") have responded to the motion and responsive briefing is complete. The

motion was referred to this court in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule

72.3(c), and is considered here as a recommendation to the district court. For the reasons below, this

court recommends Defendant's motion be denied in part without prejudice and allowed in part.

## I. BACKGROUND

On April 18, 2011, Plaintiffs filed a verified complaint [DE-1.3] in the North Carolina

Superior Court of Wake County. The complaint contains five purported causes of action: (1) libel

and slander, (2) punitive damages, (3) tortious interference with business relationships, (4) unfair

and deceptive trade practices, and (5) conversion. *Id.* ¶¶ 16-45. The case was removed to federal

court on May 23, 2011, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. [DE-1]. On May 31, 2011, in lieu of filing an answer, Defendants Fields and Cranston filed a motion to dismiss the complaint on the grounds that this court lacks personal jurisdiction over them. The parties have filed briefs, affidavits, declarations and other materials in support of their respective positions, and Defendants' motion is undertaken here in the preliminary stages of the action prior to the commencement of discovery.

## II. FACTUAL ALLEGATIONS

The court's factual summary is based on Plaintiffs' complaint, which provides threadbare allegations, as well as affidavits provided by both Plaintiffs and Defendants Fields and Cranston. *See* Aff. of Mike A. Beacham ("Beacham Aff.") [DE-13-1]; Aff. of Steve Kehrer ("Kehrer Aff.") [DE-13-6]; Decl. of Jeffrey Fields ("Fields Decl.") [DE-6-1]; Decl. of Riley Cranston ("Cranston Decl.") [DE-6-2].

A.   **Plaintiffs' Allegations**

Plaintiffs are citizens of North Carolina. Compl. ¶¶ 1-2. Defendant Fields is a resident of California and Defendant Cranston is a resident of Oregon. *Id.* ¶¶ 3, 5.[1] Plaintiffs are sole members and managers of Quantum Cool, LLC, a limited liability company organized and existing under the laws of the state of Delaware. *Id.* ¶ 8. Quantum Cool and Plaintiffs are "engaged in the business of research and development, manufacturing, distribution and sales and products and technologies." *Id.* ¶ 9.

---

[1] Defendant Michael Fields ("Michael Fields") resides in California and Defendant Stuart Hicks ("Hicks") resides in Oregon. *Id.* ¶¶ 4, 6. The record does not reflect that either Defendant Michael Fields or Defendant Hicks has been effectively served with a complaint and summons. [DE-17, 18].

In 2008, Plaintiffs "gave" Cranston and Hicks "interim authorization to proceed as distributors of Quantum Cool products in several states on the West Coast." *Id.* ¶ 10. In 2009, "based on numerous breaches of contract" by Cranston and Hicks, the "business relationship" between Plaintiffs and Cranston and Hicks ended. *Id.* ¶ 11. Around February 2010, Plaintiffs offered Cranston and Michael Fields "interim authorization to proceed with business development and sales of Quantum Cool products beginning in several areas on the West Coast." *Id.* ¶ 12. Around August 2010, "based on numerous breaches of contract" by Cranston and Michael Fields, "the business relationship between Plaintiffs and Cranston and Michael Fields ended." *Id.* ¶ 13.

Subsequent to the termination of the business relationship, "Defendants have engaged in and have aggressively increased their engagement in a number of activities intended to harass, defame and interfere with Plaintiffs' business relationships with numerous [potential clients or customers]." *Id.* ¶ 15. The potential clients or customers identified in the complaint include Martin Marietta, ALDI, Sysco Corporation, Ted Millican ("Millican "), Grant Godwin ("Godwin") and Victor and Don Matthews. *Id.* ¶¶ 27, 28. Plaintiffs allege Defendants contacted Millican, "with the intention to discredit the Plaintiffs and stop their sales by making disparaging and false statements concerning the Plaintiffs and their business." *Id.*¶¶ 15(a), 28 (a). Defendants called Godwin, a potential client of Plaintiffs', "with the intention to discredit the Plaintiffs and stop their sales by making disparaging and false statements concerning the Plaintiffs and their business." *Id.* ¶¶ 15(b), 28 (b). Defendants called Beacham's pastor and accused Beacham of stealing from parishioners. *Id.* ¶ 15(c). Defendants e-mailed Victor and Don Matthews, "with the intention to discredit the Plaintiffs and stop their sales by making disparaging and false statements concerning the Plaintiffs and their business." *Id.* ¶¶ 15(d), 28(c). From 2010 to the present, Defendants have conspired to interfere

3

with and have in fact interfered with Plaintiffs' business relationships by contacting the above-named current and potential customers and clients with the intention to discredit the Plaintiffs and stop their sales by making disparaging and false statements concerning Plaintiffs and their business. *Id.* ¶ 15(e).

Plaintiffs' affidavits, which are substantially identical, provide a great deal of particularity to several of the complaint allegations set forth above. In particular, "[o]ver a period of months," Defendants Fields and Cranston "sent numerous slanderous emails and made numerous slanderous telephone calls to current and potential customers and vendors of Quantum Cool, LLC." Beacham Aff. ¶ 5; Kehrer Aff. ¶ 5.

1.    Allegations against Defendant Fields

As for Fields, Plaintiffs' affidavits provide as follows. Defendant Fields "contacted Jeff Pavletic, a Quantum Cool employee located in North Carolina, by telephone and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 6; Kehrer Aff. ¶ 6. Fields "contacted Jens Hoeg, a former distributor for Quantum Cool located in Chapel Hill, North Carolina, by telephone and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 7; Kehrer Aff. ¶ 7 Fields contacted John Smith, a business associate of Plaintiffs in North Carolina "by telephone and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 8; Kehrer Aff. ¶ 8. Fields contacted Paul Burns, a "business contact" of Beacham's in North Carolina "by telephone and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 9; Kehrer Aff. ¶ 9. Fields contacted Roy Crain, a former distributor for Quantum Cool in North Carolina, "by telephone and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 10; Kehrer Aff. ¶ 10. Fields contacted Trebor Davis

4

in North Carolina "by telephone and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 11; Kehrer Aff. ¶ 11. Fields contacted Grant Godwin, "the Raleigh head of Martin Marietta Composites, located in Raleigh, North Carolina, by telephone and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 12; Kehrer Aff. ¶ 12. The telephone calls took place "primarily" between 2010 and 2011. Beacham Aff. ¶ 13; Kehrer Aff. ¶ 13.

In November 2010, Fields contacted Beacham's mother and brother, both of whom were located in North Carolina, "by telephone in an attempt to obtain information" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 14; Kehrer Aff. ¶ 14. In December 2010, Fields contacted Beacham's pastor located in North Carolina by telephone and accused Beacham of stealing from parishioners. Beacham Aff. ¶ 15; Kehrer Aff. ¶ 15. In December 2010, Fields "contacted Grant Godwin in North Carolina again by telephone in an attempt to interfere with a potential business relationship between Martin Marietta and Quantum Cool." Beacham Aff. ¶ 16; Kehrer Aff. ¶ 16. In January 2011, Fields contacted Beacham's son, located in North Carolina, "by telephone and made threatening and slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 17; Kehrer Aff. ¶ 17. Fields also "threatened to cause problems with [Beacham's] son's employment." Beacham Aff. ¶ 17; Kehrer Aff. ¶ 17. Fields contacted "a number of other Quantum Cool employees and associates who are located in North Carolina by telephone and email and made slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 18; Kehrer Aff. ¶ 18. In December 2010, Fields emailed Plaintiffs a document entitled "Plan For Re-Structure of Quantum Cool" in an "attempt to negotiate a takeover of Quantum Cool." Beacham Aff. ¶ 19; Kehrer Aff. ¶ 19.

In or around February 2011, Fields contacted the North Carolina Attorney General's office

and made "numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 24; Kehrer Aff. ¶ 24. The July 2011 email referenced in and attached to the affidavits suggests Fields' contact with the North Carolina Attorney General has taken the form of a complaint against Plaintiffs and Quantum Cool. *See* Beacham Aff. Ex. C [DE-13.4] at 3; *See* Kehrer Aff. Ex. C [DE-13.9] at 3.

Finally, on January 22, 2011, Fields "sent an email to numerous individuals, including Grant Godwin, Jeff Pavletic, Jens Hoag, John Smith, Paul Burns, Roy Crain and Trebor Davis, all of whom were located in North Carolina, and made numerous slanderous remarks" about Plaintiffs and Quantum Cool. Beacham Aff. ¶ 25; Kehrer Aff. ¶ 25. In the email, Fields indicates he is trying to recover money he had invested with Plaintiffs and Quantum Cool, and Fields accuses Plaintiffs of violating the terms of a non-disclosure agreement, suggesting the breach will be addressed through civil litigation. Fields states also that the threats by Plaintiffs against Fields' "well being" will be handled through criminal prosecution and that Fields is contacting "the authorities." Finally, Fields accuses Plaintiffs of being dishonest. *See* Beacham Aff. Ex. D [DE-13.5]; *See* Kehrer Aff. Ex. D [DE-13.10].

2.    Allegations against Defendant Cranston

In January 2011, Cranston called Beacham in North Carolina "in an attempt to negotiate a settlement" with Plaintiffs. Beacham Aff. ¶ 21; Kehrer Aff. ¶ 21. In particular, Cranston told Beacham that Cranston and Fields would "stop their onslaught of telephone calls and emails" if Kehrer would pay Cranston $79,000 and Fields $70,000. Beacham Aff. ¶ 21; Kehrer Aff. ¶ 21. In May 2008, Cranston signed a confidentiality agreement with Endothermic Solutions, LLC, a business formerly owned by Plaintiffs. Beacham Aff. ¶22; Kehrer Aff. ¶ 22. The parties to the

6

agreement are Endothermic Solutions, LLC and Thayer Marketing, LLC. Beacham Aff. Ex. B [DE-13.3] at 1; Kehrer Aff. Ex. B [DE-13.8] at 1. The agreement pertains to the protection of proprietary or confidential information and was executed in connection with Thayer's agreement to distribute Endothermic's products. Beacham Aff. Ex. B [DE-13.3] at 1; Kehrer Aff. Ex. B. [DE-13.8] at 1. The agreement provides among other things that it shall be construed under the laws of the State of North Carolina. Beacham Aff. Ex. B [DE-13.3] at 3; Kehrer Aff. Ex. B. [DE-13.8] at 3. The agreement was signed and agreed to by Plaintiffs on behalf of Endothermic and Cranston and Hicks on behalf of Thayer. Beacham Aff. Ex. B [DE-13.3] at 3; Kehrer Aff. Ex. B. [DE-13.8] at 3.

**B.    Declarations of Jeffrey Fields and Riley Cranston**

Defendants Fields and Cranston have countered Plaintiffs' jurisdictional allegations by offering evidence that personal jurisdiction over them is lacking. Fields is a resident of California and has never resided in North Carolina. Fields Decl. ¶¶ 1, 2. Cranston is a resident of Oregon and has never resided in North Carolina. Cranston Decl. ¶¶ 1, 2. Neither Fields nor Cranston has ever owned property in North Carolina, maintained a bank account or made loans to borrowers in North Carolina. Fields Decl. ¶¶ 3, 4; Cranston Decl. ¶¶ 3, 4. Neither Fields nor Cranston has ever traveled to North Carolina on business nor does either have clients in North Carolina. Fields Decl. ¶ 5; Cranston Decl. ¶ 5. Neither Fields nor Cranston has solicited business or provided services in North Carolina during the period of time alleged in the complaint. Fields Decl. ¶ 6; Cranston Decl. ¶ 6. Neither has processed, serviced or manufactured any products, materials or other things for use in the state of North Carolina during the time period alleged in the complaint. Fields Decl. ¶ 7; Cranston Decl. ¶ 7. Neither Fields nor Cranston has sent unsolicited bulk commercial e-mail into North Carolina using a computer, computer network or the computer services of an electronic mail

service provider in violation of the provider's policies. Fields Decl. ¶ 8; Cranston Decl. ¶ 8.

Finally, neither Fields nor Cranston has entered into a contract personally with Plaintiffs. Fields Decl. ¶ 9; Cranston Decl. ¶ 9. However, two companies owned by Cranston entered into two separate contracts with Plaintiffs. Cranston Decl. ¶ 9. In particular, in 2008, Thayer Marketing LLP, an Oregon Limited Liability Company, entered into a contract with Quantum Cool, LLC. *Id.* ¶ 9(a). In 2010, Cool Energy Solutions, LLC, a Nevada limited liability company, entered into a contract with Quantum Cool, LLC. *Id.* ¶ 9(b). The interaction between Cranston and Plaintiffs however has been in connection with Cranston's role as an employee or agent of Thayer Marketing or Cool Energy Solutions. *Id.* ¶ 10.

## III. APPLICABLE LAW

### A. Standard of Review

Where the court addresses a Rule 12(b)(2) motion without the benefit of an evidentiary hearing, but rather relies only on the motion papers, supporting memoranda, affidavits, and pleadings, the plaintiff's burden is simply to make a *prima facie* showing of jurisdiction. *Carefirst of Maryland Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *In re Celotex*, 124 F.3d 619, 628 (4th Cir. 1997); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993); Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* Civil 2d § 1351 (1990 & Supp. 2004) (collecting cases).[2] In such context, the court construes the allegations in the light most favorable to the plaintiff, assumes credibility, and draws the most favorable inferences

---

[2] Ultimately, the burden of proof on the plaintiff is one of preponderance of the evidence. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Even where plaintiff is able to make the threshold *prima facie* showing of jurisdiction, the plaintiff eventually must demonstrate jurisdiction by a preponderance of the evidence standard, either at trial or at a pretrial evidentiary hearing. *Id.* at 294 n. 5.

for the existence of jurisdiction. *Carefirst*, 334 F.3d at 396; *In re Celotex*, 124 F.3d at 628; *Wright & Miller* § 1351. All that is initially required of the plaintiff to make out a *prima facie* showing of personal jurisdiction are allegations that such jurisdiction exists. *See Clark v. Remark*, 993 F.2d 228 (table), 1993 WL 134616, at *2 (4th Cir. Apr. 29, 1993) (citing *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir. 1986)). However, the plaintiff may not rest on mere jurisdictional allegations where the defendant has countered those allegations with evidence that jurisdiction does not exist. *Id.* (citing *Barclays Leasing v. Nat'l Bus. Sys.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990)). Rather, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant. *Id.* "Once both parties have presented evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the purpose of determining whether [the plaintiff] has made a prima facie showing of jurisdiction." *Id.*

In construing the pleadings, affidavits and other supporting documents in the light most favorable to the plaintiff, the court need not "credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, P.C. v. Miller & Schuh, P.A.*, 215 F.3d 1320 (Table) 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)); *see Boykin Anchor Co., Inc., v. AT&T, Corp.*, No. 5:10-CV-591-FL, 2011 WL 1456388, at *2 (E.D.N.C. Apr. 14, 2011) (bare allegations as to defendant's connection with forum were no more than defendant acted "in concert" with other defendants, which is insufficient to establish specific jurisdiction) (citation omitted); accord *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 901 (M.D. Fla. 2007) (stating "[a] prima facie case [of personal jurisdiction] is established if the plaintiffs present sufficient evidence to defeat a motion for directed verdict").

**B.      Personal Jurisdiction**

The plaintiff faces a two part test in establishing that the court has personal jurisdiction over a nonresident defendant: (1) jurisdiction must be authorized by the state long-arm statute and (2) the exercise of jurisdiction must be consistent with due process. *Christian Science Bd. of Directors v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Each of the defendant's contacts with the forum state must be analyzed separately. *Calder v. Jones*, 465 U.S. 783, 790 (1984).[3]

1.    North Carolina Long-Arm Statute

The "federal courts exercise personal jurisdiction in the manner provided by state law." *New Wellington Fin Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Therefore, the first inquiry must be whether North Carolina's long-arm statute authorizes personal jurisdiction over Defendants. *Id*. North Carolina General Statute § 1-75.4 contains the circumstances under which personal jurisdiction is permitted over non-resident defendants. *See* N.C. Gen. Stat. § 1-75.4. Courts applying the long-arm statute should construe its provisions liberally in favor of finding jurisdiction. *See Vishay Intertech., Inc. v. Dallas Int'l Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982).

The parties dispute which particular section of N.C. Gen. Stat. § 1-75.4 applies in this case. *See* Mem. Supp. Defs' Mot. Dismiss at 4-5 [DE-6]; Mem. of Law at 5-7 [DE-13]. Plaintiffs assert the appropriate section is § 1-75.4(3), which applies to actions claiming injury within the state arising from an act or omission by a defendant within the state. *See* N.C. Gen. Stat.§ 1-75.4(3). Defendants counter that § 1-75.4(4) applies. This particular section applies to any action for injury within the state arising from an act or omission outside the state, provided that at or about the time

---

[3] Neither party has moved the court to allow the parties to engage in jurisdictional discovery and the court finds the materials submitted provide sufficient basis on which to resolve the jurisdictional dispute. *See Carefirst*, 334 F.3d at 402-03 (a court may deny jurisdictional discovery where discovery would not alter the analysis of the personal jurisdiction issue).

of injury, the defendant or another acting in its behalf was soliciting services or carrying on service activities within the state, products serviced or made by defendant were used or consumed within the state, or defendant sent unsolicited bulk commercial electronic mail by computer, computer network or computer services provider in violation of the provider's policies. *See* N.C. Gen. Stat. § 1-75.4(4). Defendants argue that none of these circumstances has been alleged and therefore the North Carolina long-arm statute fails to confer this court with personal jurisdiction over them.

Plaintiffs have claimed injury in North Carolina resulting from, among other things, Defendants' defamation and interference with Plaintiffs' business relationships in North Carolina. The North Carolina long-arm statute requires only that "the action claim injury to person or property within this state in order to establish personal jurisdiction." *Fox v. Gibson*, 176 N. C. App. 554, 558, 626 S.E.2d 841, 843 (2006) (internal quotation and citation omitted). For reasons that will become apparent further below, the court finds that N.C. Gen. Stat. § 1-75.4(3) as the applicable section of the North Carolina long-arm statute authorizing personal jurisdiction in this case. *See Saxon v. Smith*, 125 N.C. App. 163, 479 S.E.2d 788, 792-93 (1997) (the tort of libel and slander "is generally held to occur wherever the offending material is circulated") (citations omitted).

Ultimately however, as the Fourth Circuit has observed, "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Christian Science Bd. of Directors*, 259 F.3d at 215. Therefore, "the dual jurisdictional requirements [of the state long-arm statute and due process] collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend 'traditional notions of fair play an substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The court's inquiry focuses

11

therefore on whether due process would be offended by the exercise of personal jurisdiction over Defendants.

2.    Due Process Inquiry

To satisfy the constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum also provide the basis for the lawsuit. *Carefirst of Maryland, Inc.*, 334 F.3d at 397. A court exercises "general jurisdiction" over a defendant in a suit not arising from or related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). In order to establish "general jurisdiction," the nonresident defendant's contacts with the forum state must be "continuous and systematic." *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (citations omitted). In a suit arising from or related to a defendant's contacts with the forum, the court exercises "specific jurisdiction" over the defendant. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8. Here, Plaintiffs contend Defendants are subject to the court's specific and general personal jurisdiction.

## IV. DISCUSSION

### A. Specific Jurisdiction

In determining whether specific jurisdiction exists, this court must focus on the alleged conduct giving rise to the lawsuit against Fields and Cranston. To that end, "it is only if (1) [Fields and Cranston] purposefully availed [themselves] of the privilege of conducting activities in [North

12

Carolina], (2) [Plaintiffs'] claims arise out of those activities, and (3) the exercise of personal

jurisdiction would be constitutionally 'reasonable,' that [Fields and Cranston] can be held subject

to specific jurisdiction in [North Carolina]." *See Carefirst of Maryland, Inc.*, 334 F.3d at 397. In

conducting this inquiry the court should focus on the quality and nature of Defendant's contacts with

North Carolina. *See id.* (citation omitted). The court should not "merely. . . count the contacts and

quantitatively compare this case to other preceding cases." *Id.* (quotations and citations omitted).

Indeed, "[e]ven a single contact may be sufficient to create jurisdiction when the cause of action

arises out of that single contact, provided that the principle of 'fair play and substantial justice' is

not thereby offended." *Id.* (quotations and citations omitted).

1.    Defendants' alleged contact with North Carolina

In determining whether the court has specific jurisdiction over each of the Defendants, the

court considers first whether Defendants' alleged contacts with North Carolina give rise to the causes

of action – (1) libel and slander, (2) punitive damages, (3) tortious interference with business

relationships, (4) unfair and deceptive trade practices, and (5) conversion – asserted by Plaintiffs,

*see* Compl. ¶¶ 16-45, against Defendants Fields and Cranston.[4] *See Harlan v. Agenjca*

*Wydawniczo-Reklamowa*, No. 7:05-2605-HFF, 2006 U.S. Dist. LEXIS 7747, at *11, 2006 WL

360023, at *4 (D.S.C. Feb. 15, 2006) (jurisdiction existed in part because "[p]laintiffs have presented

adequately supported allegations indicating . . . defendants committed an intentional tort . . . ."). In

---

[4] The court need not address Defendants' contacts with the forum in regard to Plaintiffs' claim for punitive damages because a claim for punitive damages does not exist as an independent cause of action. Rather, "[i]f the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all.'" *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (1991) (quoting J. Stein, *Damages and Recovery* § 195 at 389 (1972)).

so doing, the court resolves all evidentiary conflicts in favor of Plaintiffs, discounting conclusory allegations.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing the conduct would cause harm to a forum resident. *Id.* at 788-89. In *Calder*, the Supreme Court articulated the "effects test" which requires that to satisfy the requirements of specific jurisdiction the plaintiff must establish: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. *Id.*; *see Carefirst of Maryland, Inc.*, 334 F.3d at 398 n.7.

      i.    *Libel and Slander*

Plaintiffs couch their defamation claim as both one of libel and slander. Libel per se makes actionable any written publication that (1) charges that a person has committed an infamous crime, (2) charges a person with having an infectious disease, (3) tends to impeach a person in that person's trade or profession, or (4) otherwise tends to subject a person to ridicule, contempt or disgrace. *See Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004) (citing *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002)). Slander per se is a false oral communication that (1) accuses a person of committing a crime of moral turpitude, (2) impeaches a person in his trade, business or profession, or (3) implies that a person has a loathsome disease. *See id.* (citing *Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 459, 524 S.E.2d 821, 824 (2000)).

In order to assert a cause of action for defamation, a plaintiff must allege facts which show "[1] the defendant made false, defamatory statements of or concerning the plaintiff, [2] which were published to a third person, [3] causing injury to the plaintiff's reputation." *Griffin v. Holden*, 180 N.C. App. 129, 133, 636 S.E.2d 298, 302 (2006) (internal citations and punctuation omitted). "The alleged defamatory statement or statements made or published by the defendant need not be set out verbatim in plaintiff's defamation complaint if alleged 'substantially *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Andrews v. Elliot*, 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993) (quoting *Stutts v. Duke Power Co.*, 47 N. C. App. 76, 83-84, 266 S.E.2d 861, 866 (1980)); *Eli Research, Inc.*, 312 F. Supp. 2d at 762. Neither the Federal Rules of Civil Procedure nor the Fourth Circuit imposes a heightened pleading requirement for defamation, rather the proper standard for assessing the legal sufficiency for a defamation claim is Rule 8(a) of the Federal Rules of Civil Procedure. *Eli Research, Inc.*, 312 F. Supp. 2d at 762; *Market Choice, Inc. v. New England Coffee Co.*, No. 5:08-CV-90, 2009 WL 2590651, at *5 (W.D.N.C. Aug. 18, 2009) (citing *Wuchenich v. Shenandoah Mem'l Hosp.*, 215 F.3d 1324, 2000 WL 665633, at *14 (4th Cir. 2000)). In accordance with Rule 8(a), the complaint must allege enough facts to demonstrate that the claim is plausible on its face. *Market Choice, Inc.*, 2009 WL 2590651, at *5 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Construing the allegations of the complaint and evidence presented in the light most favorable to Plaintiffs, and drawing the most favorable inferences for the existence of jurisdiction from the materials provided by the parties, the court finds that Plaintiffs have made a *prima facie* showing of specific personal jurisdiction as to their defamation claim against Fields only.

Plaintiffs allege Defendants made "disparaging and false statements" concerning Plaintiffs

and their business. Compl. ¶¶ 15(a), (b), (d), (e). According to Plaintiffs' affidavits, Fields and Cranston "sent numerous and slanderous emails and made numerous slanderous telephone calls to current and potential customers and vendors of Quantum Cool." Beacham Aff. ¶ 5; Kehrer Aff. ¶ 5. The affidavits however identify telephone calls made only by Fields. Beacham Aff. ¶¶ 6-12, 14-18; Kehrer Aff. ¶¶ 6-12, 14-18. Plaintiffs assert Fields contacted several persons in North Carolina and made "made numerous slanderous remarks" about Plaintiffs and their business. These allegations and statements of evidence are legal conclusions and provide the court with no basis on which to determine whether Plaintiffs have alleged an intentional tort for defamation cognizable in North Carolina against Defendants Fields and Cranston. In other words, the court cannot determine whether these particular telephone calls or emails to persons in North Carolina provide the basis for the cause of action to be asserted.

On the other hand, Fields' alleged telephone call to Beacham's pastor in North Carolina in which Fields is alleged to have accused Beacham of stealing from church parishioners constitutes an accusation of moral turpitude. *See Jones v. Brinkley*, 174 N.C. 23, 93 S.E. 372, 373-74 (1917) (falsely accusing plaintiff of stealing ice cream from a church festival is an offense of moral turpitude); *see Greer v. Skyway Broad. Co.*, 256 N.C. 382, 391, 124 S.E.2d 98, 104 (1962) ("Any written or spoken words . . . falsely imputing that a person is guilty of the crime of . . . robbery are actionable per se because [this] crime[] involve[s] moral turpitude."). Additionally, Fields' email of January 2011 accusing Plaintiffs of being dishonest in their business and of violating a non-disclosure agreement impeaches Plaintiffs in their business or trade. The allegations and evidence against Fields provide sufficient facts to demonstrate a claim of libel and slander is plausible on its face. *See Twombly*, 550 U.S. at 570. The allegations and evidence give rise to an intentional tort

16

and therefore satisfy Plaintiff's *prima facie* showing of personal jurisdiction over Fields with respect to a claim for defamation.

The remaining evidence construed in Plaintiffs' favor shows that Cranston's contact with North Carolina consists of a single telephone call to Beacham and that during the call Cranston offered that he and Fields would cease "their onslaught of telephone calls and emails" in exchange for money. Cranston's single telephone call to the forum fails to give rise to a cause of action for defamation. Specific personal jurisdiction against Cranston for this purported cause of action therefore does not exist as alleged.

ii. *Tortious Interference with Business Relationships*

Plaintiffs seek recovery from Defendants' alleged interference with Plaintiffs' relationships with current and prospective customers. Compl. ¶¶ 25-31. The theory of recovery identified in the complaint as "Tortious Interference with Business Relationships" is essentially two causes of action recognized under North Carolina tort law: (1) interference with contractual relations and (2) interference with prospective economic advantage. In order to state a claim for tortious interference with contractual relations, a plaintiff must allege facts which show: (1) a valid contract existed between the plaintiff and a third person, conferring some contractual right against the third person, (2) the defendant had knowledge of the contract, (3) the defendant intentionally induced the third person not to perform his contract with the plaintiff, (4) in so doing the defendant acted without justification and (5) the defendant's act caused plaintiff actual damages. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954)). In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must allege facts which show that the defendant acted

17

without justification in "inducing a third party to refrain from entering into a contract with [the plaintiff] which contract would have ensued but for the interference." *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000) (citation omitted).

Plaintiffs allege that contracts existed with its current customers and that Plaintiffs "legitimately expect[ed] to establish new customer and client relationships with various potential customers." *Id.* ¶ 27. At the outset, the court notes that while Plaintiffs allege Defendants' interfered by making "disparaging and false statements" regarding Plaintiffs and their business to current and prospective clients, Ted Millican, Grant Godwin and Victor and Don Matthews, *see id.* at ¶ 28, Plaintiffs' affidavit evidence indicates such statements were made by Fields only. *See* Beacham Aff. ¶¶ 6-12, 14-18; *See* Kehrer Aff. ¶¶ 6-12, 14-18. As Plaintiffs' allegations against Cranston do not concern current or potential customers and thus fail to give rise to an intentional tort against him, there is no specific personal jurisdiction over Cranston for this cause of action.

Turning to allegations against Fields, as to the tort of interference with contractual relations, Plaintiffs have satisfied their *prima facie* showing of personal jurisdiction over Fields. However, as to the tort of interference with prospective economic advantage, Plaintiffs allege only that Fields' contact with potential customers in North Carolina resulted in Plaintiff losing "prospective customers that the Plaintiffs reasonably expected to retain or acquire." *Id.* ¶ 29. This allegation is insufficient as it fails to allege the existence of contracts with prospective clients that would have been consummated but for Defendants' alleged interference. *See Holroyd v. Montgomery County*, 167 N.C. App. 539, 546, 606 S.E.2d 353, 358 (2004) (failure to allege existence of a contract precludes claim of interference with prospective economic advantage).

     iii.    *Unfair and Deceptive Trade Practices*

In order to assert a cause of action for unfair or deceptive trade practices, a plaintiff must allege facts which show (1) defendant committed an unfair or deceptive act or practice, (2) the act in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). A trade practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Walker v. Fleetwood Homes of North Carolina, Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007). A plaintiff claiming unfair or deceptive trade practices must establish they suffered actual injury as a proximate result of the defendant's unfair or deceptive act. *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). In the present case, Plaintiffs' purported cause of action hinges on the alleged conduct of Defendants' as set forth in the complaint and more particularly contained in the affidavit evidence Plaintiffs have presented to the court.

The application of the UDTPA is however limited to regulating two types of interactions in the business setting: (1) interactions between businesses and (2) interactions between businesses and consumers. *White v. Thompson*, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010). Neither Fields nor Cranston is alleged to be a business, engaged in a business and Plaintiffs are individuals and have not characterized their relationship with either Defendant as a business or a consumer. *See id.* (explaining "the history of the Act indicates that the General Assembly was targeting unfair and deceptive interactions between market participants"); *see also Bhatti v. Buckland*, 328 N.C. 240 at 246, 400 S.E.2d 440, 444 (N.C. 1991) ("[T]he Act is directed toward maintaining ethical standards in dealings between persons engaged in business . . . .") (quoting *United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041, 1046 (E.D.N.C. 1979)). Accordingly, the UDTPA does

19

not apply and Defendants' alleged contact with the forum therefore fails to give rise to a cause of action. Specific personal jurisdiction therefore does not exist with respect to either Fields or Cranston as to this purported cause of action.

Furthermore, with respect to Cranston, evidence construed in Plaintiffs' favor shows that Cranston's contact with North Carolina consists of a single telephone call to Beacham and that during the call Cranston offered that he and Fields would cease "their onslaught of telephone calls and emails" in exchange for money. Plaintiffs do not alleged to have suffered actual damages resulting from Cranston's alleged action. Because Plaintiffs have failed to allege that they suffered damages as a result of Cranston's attempt to solicit money from them, Cranston's single telephone call to the forum state fails to give rise to a cause of action for unfair or deceptive trade practices. As Cranston's alleged contact with the forum fails to give rise to a cause of action, specific personal jurisdiction against him for this purported cause of action does not exist as alleged.

iv. *Conversion*

To state a claim conversion under North Carolina law, plaintiff must allege the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000) (quoting *Spinks v. Taylor & Richardson v. Taylor Co.*, 303 N.C. 256, 264, 278 S.E.2d 501, 506 (1981)). Conversion is limited to claims involving goods and personal property and does not include "interests such as business opportunities and expectancy interests." *Id.*; *see also Edmondson v. American Motorcycle Ass'n., Inc.*, 7 Fed. Appx. 136, 148 (4th Cir. 2001) ("intangible business assets such as business expectancies and good will may not be the proper subject of a claim for conversion under North

Carolina's common law"). This purported cause of action is alleged against Hicks and Cranston. Compl. ¶ 38. Plaintiffs allege "Defendants came into possession of personal property belonging solely and separately by [sic] the Plaintiffs." *Id.* No allegation has been made as to how Cranston received the alleged personal property. Cranston's telephone call to Beacham, his only alleged contact with the forum, does not give rise to a cause of action for conversion. Therefore, there is no specific jurisdiction over Cranston for this purported cause of action.

2. <u>Fields purposefully availed himself to activities in North Carolina and exercising personal jurisdiction over Fields is constitutionally reasonable.</u>

Because Fields' alleged conduct, out of which this case arises, was directed to North Carolina, "in more than a random, fortuitous, or attenuated way, Fields "should [have] be[en] able to anticipate being sued" in this forum. *See Mitrano v Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (citing *ESAB Group Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)); *see e.g., Calder*, 465 U.S. at 789-90 (jurisdiction of forum state upheld where libel "expressly aimed" at forum state with knowledge that "potentially devastating impact" would be felt there).

In determining whether the exercise of personal jurisdiction would be constitutionally reasonable over Fields, the court may consider factors such as: "the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *See Consulting Eng'rs Corp.*, 561 F.3d at 279 (citations omitted). The weight of these factors supports a finding that North Carolina is an appropriate forum for this matter. First, Fields is adequately represented in this matter. Next, North Carolina has a strong interest in

protecting its citizens from local injury caused by conduct of nonresidents. *See Fox*, 176 N.C. App. at 559, 626 S.E.2d at 844. Third, according to the pleadings, it appears that most of the witnesses and evidence are located in North Carolina. Accordingly, the court finds that the exercise of jurisdiction is constitutionally reasonable and that this court is an appropriate forum for this matter.

## B.    General Jurisdiction as to Defendant Cranston[5]

"[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 717, 715 (4th Cir. 2002) (internal quotations omitted). In order for the court to confer its general jurisdiction over a defendant, the defendant's contacts with the forum must be continuous and systematic such that the defendant may be subject to suit in the forum for any reason, regardless of where the relevant conduct occurred. There is nothing in the record before the court that demonstrates Defendant Cranston's contacts with North Carolina are continuous and systematic. Rather, Cranston's contact is limited to a single telephone call to North Carolina. All other purported contact Cranston had with North Carolina was not in his individual capacity but as an officer of Thayer Marketing.[6] However, Thayer Marketing's contacts with North Carolina may not be imposed upon Cranston. *See Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1055-56 (4th Cir. 1983) (explaining "the acts of a corporate officer or employee taken in his

---

[5] Having found that Fields' contacts with North Carolina are sufficient to confer specific jurisdiction over him this court does not address whether Fields is subject to the court's general jurisdiction.

[6] Plaintiffs point out that the contract between Endothermic and Thayer contains a choice of law provision favoring North Carolina law in the resolution of contract disputes. A choice of law provision alone, however, is not sufficient to confer personal jurisdiction; rather, the jurisdictional inquiry remains focused on the extent, quality and nature of the defendant's contacts with the forum. *See Consulting Eng'rs Corp.*, 561 F.3d at 281 (citations omitted).

corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity") (citation omitted). Personal jurisdiction may not be exercised upon Cranston on this basis.

## III. CONCLUSION

For the reasons stated above, this court RECOMMENDS Defendants' motion to dismiss be denied in part without prejudice and allowed in part. In particular, it is RECOMMENDED Defendants' motion be ALLOWED as to Defendant Cranston and DENIED WITHOUT PREJUDICE as to Defendant Fields.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 21st day of November, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge